HENRY BIRKMAN ET AL. v. JOHANNA FAHRENTHOLD.

Decided November 18, 1908.

**1.—Intoxicating Liquors—Sale—"Baskin-McGregor Law."**

The Act known as the "Baskin-McGregor Law" did not have the effect of repealing all pre-existing laws regulating the sale of intoxicating liquors.

**2.—Same—Service of Notice not to Sell—Pleading.**

In a suit upon a liquor dealer's bond for selling intoxicating liquors to

an habitual drunkard after service of notice not to do so, an allegation that a certain constable served said notice on the defendant, without stating that the notice was delivered to him, was sufficient as against a special exception.

#### 3.—Liquor Dealer's Bond—Suit for Penalty—Evidence—Practice.

When substantially the same testimony has been admitted during a trial without objection, a· party can not complain of the subsequent admission of similar testimony over his objection. In an action for breach of a liquor dealer's bond by the sale of intoxicating liquors to an habitual drunkard, it having been proven without objection that the inebriate would not work while he was drinking and that his wife (the plaintiff) would then do his work, it was not error to admit testimony as to the details of the work she did on such occasions, over the objection that it was calculated to prejudice the jury against the defendants.

#### 4.—Same—Same—Conspiracy—Evidence in Denial—Practice.

In an action by a wife against a liquor dealer for selling intoxicating liquor to her husband, an habitual drunkard, the defendant having plead that the husband and wife had conspired to obtain liquor for the husband for the sole purpose of mulcting the defendant in damages, evidence of violent threats and conduct on the part of the husband at his home while drinking, was admissible in refutation of said charge, and this, although the defendant had introduced no evidence in support of said allegation at the time said evidence was admitted.

#### 5.—Practice—Cross-Examination of Witness—Reproduction of Objectionable Testimony—Waiver.

When a defendant, upon cross-examination of the plaintiff's witness, reproduces testimony objected to on direct examination, he thereby nullifies his previous objection.

#### 6.—Sale of Intoxicating Liquors—Habitual Drunkard—Relevant Testimony.

Upon the issue whether or not plaintiff's husband was an habitual drunkard, testimony as to disturbances heard by neighbors in plaintiff's home and the frequency of the same, considered, and held admissible over the objection that said testimony was irrelevant and inflammatory.

#### 7.—Same—Relevant Testimony.

The wife having testified, in a suit by her against a liquor dealer for selling intoxicating liquor to her husband, to having seen her husband take a drink at defendant's saloon on a certain occasion and the subsequent conduct of the husband at his home, it was permissible, for the purpose of directing his attention to the same occasion, to ask the son if he remembered any time his mother claimed to have seen his father drink at defendant's saloon. An objection that said question elicited hearsay testimony corroborative of the wife's statement as to seeing· the husband take a drink, was properly overruled.

#### 8.—Same—Withdrawal of Notice—Relevant Testimony.

In an action by a wife against a liquor dealer for selling intoxicating liquor to her husband, the defendant having plead that the plaintiff had withdrawn the notice and that he made no sales to the husband until after the notice had been withdrawn, the testimony of the son to the effect that on one occasion his mother sent him to defendant's place of business to tell defendant to stop selling whisky to the husband, was admissible to show that the notice was in force at the time.

#### 9.—Same—Dates of Sales—Pleading—Proof.

The plaintiff having alleged that the defendant "on or about" certain dates, naming eight in all, unlawfully sold intoxicating liquors to her husband, the court properly charged the jury that the plaintiff would not be confined to the specific dates of sale alleged in her petition but might prove any sales between the date of defendant's bond and the filing of the suit.

**10.—Same—Burden and Degree of Proof.**

It is not necessary for a plaintiff, in a suit upon a liquor dealer's bond to recover a penalty for a breach of the same, to prove his case beyond a reasonable doubt; a preponderance of the evidence is all that is required.

**11.—Same—Charge—Submission of Issue.**

A charge worded as follows: "Unless you further find from the evidence that when he (the defendant) sold or gave intoxicating liquor, etc.," in a suit upon a liquor dealer's bond, is not subject to the objection that it assumed the fact, or did not submit it to the determination of the jury.

**12.—Same—Defense—Withdrawal of Notice.**

The fact that a wife sent word by a third party to a saloon keeper that she withdrew her notice to him not to sell intoxicating liquors to her husband, would be no defense to a suit upon the bond by the wife if the message was never in fact communicated to the defendant and did not induce his action.

**13.—Same—Charge—Assumption of Fact.**

It is not error for the trial court in its charge to the jury to assume as true a fact about which there is no conflict in the evidence.

**14.—Same—Charge—Construction.**

In a suit upon a liquor dealer's bond, charge considered, and held not subject to the construction that it authorized a verdict against the defendant for sales made prior to the execution of the bond sued on.

**15.—Same—Charge Approved.**

In an action upon a liquor dealer's bond, charges considered, and held not subject to the objection that they assumed that certain controverted issues had been established and were therefore on the weight of the evidence.

**16.—Same—Principal and Surety—Admissions of Principal—Evidence.**

Statements of a principal in a bond are not admissible as an admission against the sureties on the bond unless said statements are res gestae. This rule applied in a suit upon a liquor dealer's bond.

**17.—Same—Liability of Surety—Insufficient Evidence.**

A liquor dealer's bond was dated on February 1st; a suit was filed against the principal and sureties on the bond in the following August; the competent testimony showed only two specific sales to plaintiff's husband between the date of the bond and the filing of the suit. Held, that testimony that about ten sales were made to plaintiff's husband between January 1st of the same year and the filing of the suit, was insufficient to show that more than two sales were made during the life of the bond, and therefore insufficient to support a larger verdict against the sureties than the penalty for the two sales.

**18.—Practice—Special Charge—Limiting Effect of Evidence.**

Ordinarily, when evidence is properly admitted against one party to a suit, the party as to whom it is not admissible should request a special charge limiting its effect, but this rule does not apply when the question presented is, Does the testimony support the verdict against the party as to whom the evidence was not admissible. In such case the failure to request a special charge is immaterial.

Appeal from the District Court of Colorado County. Tried below before Hon. Munford Kenan.

*Adkins & Green,* for appellants.—It is reversible error to admit over objection irrelevant, immaterial and inflammatory evidence, the necessary effect of which must be to arouse the sympathies of the jury in favor

of the party offering same, and at the same time inflame their minds against the cause of the party objecting, to the prejudice of his rights. City of Belton v. Lockett, 57 S. W., 687; Gulf, C. & S. F. Ry. Co. v. Levy, 59 Texas, 550; Henslee v. Henslee, 24 S. W., 321; Waul v. Hardie, 17 Texas, 558; Houston & T. C. Ry. Co. v. Burke, 55 Texas, 340; Griffis v. Payne, 92 Texas, 297.

That no statement of principal is admissible as an admission against his sureties, unless res gestae: Lacoste v. Bexar County, 28 Texas, 420; McFarlane v. Howell, 43 S. W., 315; Screwmen v. Smith, 70 Texas, 175.

A verbal notice sent by plaintiff through a third party to a liquor dealer not to sell is of no binding effect and therefore immaterial, and when couched in language presupposing such dealer to be guilty of selling liquor, as claimed by plaintiff, becomes so hurtful and prejudicial to the defendant's case as to render its admission reversible error. It is elementary that plaintiff can not recover for sales subsequent to the last claimed in his petition, and especially so when there is nothing to show how the verdict for five sales was arrived at. Gulf, C. & S. F. Ry. Co. v. Darton, 23 S. W., 89; Loving v. Dixon, 56 Texas, 79; Houston & T. C. Ry. Co. v. Lackey, 33 S. W., 769; Steph. Plead. (9th Am. ed.), 291.

The court erred in giving the paragraph of his charge to the jury as follows: "The burden is upon the plaintiff to show, by a preponderance of the evidence, all the material allegations of her petition." Chaffee v. United States, 18 Wall., 516; Gulf, C. & S. F. Ry. Co. v. Dwyer, 84 Texas, 195; Texas & P. Ry. Co. v. Wood, 23 S. W., 744.

Where, in suit on liquor dealer's bond, defendant relies upon the fact that notice not to sell has been revoked and consent to sell given by plaintiff, who requests one saloon-keeper to so notify the other saloonkeepers in a town, it is error to restrict by the charge the right of the dealer to sell, unless such dealer has been informed of such revocation, for the reason that, after plaintiff so gave her consent and revoked said notice, she was no longer an aggrieved party, regardless of whether or not the messenger violated his instructions and failed to give notice thereof to such dealer.

That consent is a defense, to be proven as any other fact: Edgett v. Finn, 36 S. W., 830; Tipton v. Thompson, 50 S. W., 641; Kruger v. Spachek, 54 S. W., 295; Roach v. Springer, 75 S. W., 933.

That defendants are not liable for sales before February 3, 1906, the date of bond, is elementary, as is also the proposition that defendants are entitled to an affirmative presentation of their defenses, as well as the invariable rule that a misleading charge is cause for reversal; and where there is no way to ascertain how the verdict for five different sales was arrived at, the error is apparent. Gulf, C. & S. F. Ry. Co. v. Darton, 23 S. W., 89; Loving v. Dixon, 56 Texas, 79; Houston & T. C. Ry. Co. v. Lackey, 33 S. W., 769.

That it is error to assume the existence of a material issue without evidence: Rev. Stats., art. 1317.

That the issue is material: Reagan v. Wooten, 16 S. W., 546; Geraghty v. State, 110 Ind., 103; State v. Smith, 122 Ind., 178; Engle v. State, 97 Ind., 122; Dolan v. State, 122 Ind., 141; State v. Gutekunst,

24 Kan., 252; Taylor v. Carroll, 145 Mass., 95; Tate v. Donovan, 143 Mass., 590; Kennedy v. Saunders, 142 Mass., 9.

That notice not to sell must show that plaintiff was the wife of Herman Fahrenthold, or that Birkman knew that the person signing as Johannah Fahrenthold was the wife of the Herman Fahrenthold mentioned in the notice: Sackett v. Ruder, 152 .Mass., 397.

That notice not to sell must be served by delivery by peace officer, as a prerequisite to recover: Reagan v. Wooten, 16 S. W., 546; Geraghty v. State, 110 Ind., 103; State v. Smith, 122 Ind., 178; Engle v. State, 97 Ind., 122; Dolan v. State, 122 Ind., 141; State v. Gutekunst, 24 Kan., 252; Taylor v. Carroll, 145 Mass., 95; Tate v. Donovan, 143 Mass., 590; Kennedy v. Saunders, 142 Mass., 9.

*Brown, Carothers & Brown,* for appellee.—Where the plaintiff alleges that a written notice was served upon the defendant by a peace officer, such allegation imports that the service was made as required by law, especially when the allegation of such service is in the very words of the statute requiring such service. City of Ysleta v. Lowenstein, 25 S. W., 444; Gonzales v. Chartier, 63 Texas, 36; 22 Am. & Eng. Ency. of Law, pp. 1267 and 1274.

Where evidence is admitted over objection, error in admitting it, if error there be, is rendered harmless where evidence of the same facts is admitted without objection. Chicago, R. I. & P. Ry. Co. v. Porterfield, 92 Texas, 442; Munoz v. Brassel, 108 S. W., 421; City of San Antonio v. Potter, 71 S. W., 765; St. Louis S. W. Ry. v. Hughes, 73 S. W., 977 (motion for rehearing).

The evidence objected to was relevant and material to prove that plaintiff's husband was habitually drunk, especially when evidence had been introduced showing that when the husband was sober he did the tinning work, etc., which his wife had to do when he was drunk. Fire Ass'n of Philadelphia v. Jones, 40 S. W., 45.

Where the habitual drunkenness of plaintiff's husband is in issue, testimony of his wife and son that he would mistreat them, curse and abuse them, and get his six-shooter and threaten to kill them, when he was drunk, but would not do so when sober, is admissible to prove the drunkenness of plaintiff's husband. 1 Greenleaf on Evidence (16th ed.), par. 141; 1 Wigmore on Evidence, p. 294, sec. 235; 3 Words and Phrases Judicially Defined, p. 2209, vol. 4, p. 3735; 7 Ency. of Evidence, p. 777.

In a suit on a bond, an admission of the principal, made while on the witness stand at a former trial, is admissible in evidence against him and his sureties, where the only objection urged is that the evidence is "not admissible as an admission," such objection being urged by the principal and sureties jointly, and not by the sureties alone. Hatch v. Pullman Co., 84 S. W., 246; Daniel v. Harvin, 31 S. W., 421.

In a suit on a liquor dealer's bond for illegal sales, time is not of the essence of the recovery, and proof of sales made after the giving of the bond and after notice not to sell, but before the filing of the suit, is sufficient, though the sales are alleged to have been made "on or about" certain dates. Gulf, C. & S. F. Ry. Co. v. Witte, 68 Texas, 296; Munoz v.

Brassel, 108 S. W., 420; Hawthorne v. State, 87 S. W., 839; White v. Manning, 102 S. W., 1160; Kruger v. Spachek, 54 S. W., 295.

In a suit on a liquor dealer's bond the plaintiff is only required to prove his case by a preponderance of the evidence. Cox v. Thompson, 85 S. W., 34; Waters-Pierce Co. v. State, 106 S. W., 918 (syllabus No. 12, and page 929); Houston & T. C. Ry. v. State, 103 S. W., 449; Texas & Pac. Ry. v. Mahaffey, 81 S. W., 1047; 1 Greenleaf on Evidence (16th ed.), par. 81d; Hawloetz v. Kass, 25 Fed. Rep., 766; State v. Chicago, M. & St. P. Ry., 122 Iowa, 22 (96 N. W., 904); People v. Briggs, 114 N. Y., 64 (20 N. E., 820); Campbell v. Burns, 94 Me., 127; Roberge v. Burnham, 124 Mass., 277.

In answer to appellant's contention that if appellee consented she could not be aggrieved, regardless of whether or not the consent was communicated to appellant, appellee cites the following cases, construing the word "aggrieved" as used in the statute: Ellis v. Brooks, 102 S. W., 94; White v. Manning, 102 S. W., 1161; Peavy v. Goss, 90 Texas, 89; Kruger v. Spachek, 54 S. W., 295; Rintleman v. Hahn, 49 S. W., 174; Johnson v. Rolls, 97 Texas, 453.

As authority for the proposition that consent must be relied upon, and therefore must be communicated, see Roach v. Springer, 75 S. W., 933; Tarkington v. Brunett, 51 S. W., 274; Goldsticker v. Ford, 62 Texas, 385; McCue v. Klein, 60 Texas, 168; Missouri, K. & T. Ry. v. Dennins, 84 S. W., 860; Ford v. Ford (Mass.), 10 N. E., 474.

Where there is uncontroverted evidence of appellant's admission that he made at least ten sales of liquor after the execution of the liquor dealer's bond sued on, and there is uncontroverted evidence, from other sources than appellant, of one sale and one gift of liquor after the execution of the bond, and where the jury returns a verdict for only five sales, and where there is no evidence of sales made before the execution of the bond, the jury could not be misled, nor could the appellant be harmed, by a charge which, under a strained construction, standing apart from the rest of the charge, might seem to authorize a recovery for sales before the execution of the bond. International & G. N. Ry. Co. v. Voss, 109 S. W., 984.

JAMES, CHIEF JUSTICE.—The action is by Mrs. Fahrenthold upon a liquor dealer's bond, against Henry Birkman as principal and his sureties on such bond. The trial was had on plaintiff's third amended petition, wherein she alleged that the defendants were liable to her for eight infractions of said bond, because Birkman, his employe and agent, sold and permitted to be sold, gave and permitted to be given, at his place of business, to her husband, Herman Fahrenthold, liquors denounced in said bond, while he was an habitual drunkard, and also made such sales and gifts after she had served notice upon him in writing, through a peace officer, not to sell to her said husband.

Defendants answered by general and special demurrers, general denial, denial that said Fahrenthold was ever an habitual drunkard; that notice not to sell to him was never served on Birkman, and, if served, it was withdrawn by plaintiff, and she had given her full consent to Birkman to sell to her husband; and that Birkman made no sales nor gifts to him until after such withdrawal and permission. Defendants

also pleaded conspiracy between plaintiff and husband, and estoppel. The verdict was against defendants for $2,500.

The first assignment of error goes to the overruling of the general demurrer. The substance of the propositions under this assignment is that what is known as the Baskin-McGregor Act had the effect of repealing the former statutes on the subject. An opinion of the court, in a case recently decided, discusses and disposes of this matter, and we refer to it for reasons and authorities for overruling this assignment. Johanna Fahrenthold v. Tell, ante, 110.

The second is that the special exception was good, which complained that there was no allegation by plaintiff that the notice not to sell was served by the officer delivering said notice to Birkman. The allegation was that Miles, constable of precinct No. 4, Colorado County, served said notice on Birkman, without stating that he delivered it to him. The allegation was in language used in the statute, and service by delivery being what was meant by the word "served," the allegation covered it.

The third assignment is addressed to the testimony of Mrs. Fahrenthold and of Hugo, her son. The former was, over objection, permitted to testify: "I attended to his business when he was drunk—the tinner's business. I did the selling and a great deal of work. I made stove pipes and put up stoves, and I made valleys and different things with my own hands." The son, as follows: "In the business she, my mother, sold things, and made stove pipes and things like that. She made the work and soldered it together."

The proposition is that this testimony was irrelevant and calculated to prejudice defendants' cause. It appears that there was testimony showing that Fahrenthold's business was hardware, and tinner by trade, and he would not work while he was drinking, and she would do the work then. This testimony was without objection, and it tended to show that she did what the business called for during such periods. Without more, this would furnish facts for a legitimate argument to the jury that she did all the things recited in the testimony as above objected to. We think the testimony came within the rule that defendants can not complain of its admission when substantially the same testimony was allowed to go in without objection.

The fourth, and some of the kindred assignments briefed along with it, complain of plaintiff being allowed to testify: "He would get his six-shooter and cock it, and be mad at me and the boy, and tell us to go to hell." And of the son testifying: "When papa was drunk he would try to run us out and cursed us, and does everything like that. He would try to do different things; he would make threats. He threatened to kill us, and everything like that." "Papa said he was going to kill her on that occasion if she did not get him some place where he could get whiskey."

It was testified to that, when sober, he was a good man and a good father, but would mistreat his family when drunk, and that during the last three years he was drunk most of the time. Sometimes for three days he would be all right, and then get drunk and stay drunk two or three weeks. When he was drunk he would treat his wife and son anyway—just as bad as a man could treat them. This testimony of Mrs. Fahrenthold and son was not objected to. It embraced testimony broad

enough to imply that objected to, and for this reason alone the judgment ought not to be disturbed on account of it.

One of defendants' pleas was: "That plaintiff and her husband fraudulently connived and entered into a conspiracy in order to obtain said liquor for her husband with the intention and for the sole purpose of fraudulently mulcting these defendants in damages." Upon such an issue the testimony would have been both relevant and material, as the husband's conduct, if as narrated by said witnesses, would tend to refute such a plea. We have not investigated the testimony to ascertain whether or not there was evidence offered in support of this plea. We presume not, as there was no submission of it, and the plea was manifestly no defense; but defendant having pleaded it, plaintiff was warranted in anticipating that defendant would rely upon it. The judge, in the absence of any objection that defendant had not introduced any evidence on the subject or any declaration that he would not do so, was warranted in treating the plea as seriously interposed, and under these circumstances the court can not be said to have committed error at that time in overruling the particular objections. The presence of such testimony in the case, coming in under these circumstances, would not invalidate the trial, even though defendant did not afterwards undertake to substantiate the plea, the court's attention not being directed to the matter any more during the trial.

The fifth assignment is that the court erred in not excluding the following testimony of plaintiff while testifying in regard to the return home of her husband from Birkman's saloon, where she followed him and where she testified she saw him take a drink: "He did not go home right away, but in a little while came, and when he did he cursed me more than ever, and told me he would kill me if I tried that again." "He said he would kill me if I followed him again. I do not remember any other threats; I said he got a pistol," because irrelevant, immaterial and inflammatory, and calculated to arouse the sympathies of the jury and inflaming to their minds. This conduct of Fahrenthold was relevant to the plea of conspiracy between the husband and wife, as explained above. The same is true of the evidence dealt with by the sixth, seventh and ninth assignments.

In this connection, and in addition to what is above held, we may state that the testimony complained of by the fourth, fifth, sixth and seventh assignments was rendered unobjectionable by reason of the fact that appellants reproduced the same testimony in effect through cross-examination of the witnesses. Eastham v. Hunter, 98 Texas, 565.

The eighth is that there was error in permitting Owen Heyer, who stated that he lived close to plaintiff and her husband, to testify: "I ran out several times to see what was up. I heard tables and chairs flying around and furniture knocking about. I could see what it was and got back home fast. It was Herman Fahrenthold raising rackets with his wife. She would be halloaing and crying, I reckon." The objection was again that this was irrelevant, immaterial and inflammatory testimony.

The plaintiff and her son testified that Fahrenthold would abuse and mistreat her when drunk, but not when sober. The testimony complained of was only a portion of the testimony of the above witness, which was in subtance that he had his office about seventy-five feet from

their place; that he had heard rackets there; they complained that he (Fahrenthold) was drunk.  He had heard rackets and howls.  "I ran out several times to see what was up; I heard tables and chairs flying around and furniture knocking about, and I could see what it was, and got back home fast.  It was Herman Fahrenthold raising rackets with his wife.  She was halloaing and crying, I reckon.  At the time he was raising these rackets he was drunk.  I don't think liquor ever made him stagger; I have never seen him stagger.  I have seen him when he was drinking for a week or ten days at a time.  He would not stagger. He would get sick and go to bed.  They have been having trouble there for two or three years.  He seemed to be getting worse all the time.  I would pass him when he was drunk and say nothing to him.  I have seen him raising Cain, and they said he was drunk."  There being testimony that when sober he would not mistreat plaintiff, it was admissible to prove frequency of such conduct toward plaintiff on the issue of his being an habitual drunkard.

We dispose of the tenth assignment by stating that the bill of exceptions which relates to the matter complained of, as qualified by the trial judge, discloses that an exception to the ruling was not reserved.

The eleventh is that the court erred in allowing the son to testify as follows: "Do you remember any time your mother claims to have seen him drink at Birkman's?"  "Yes, sir; I remember a time when my mother claims to have seen him drink a drink at Birkman's saloon." This was objected to as hearsay.  The plaintiff, it appears, had testified to seeing her husband take a drink at Birkman's saloon on July 30, 1906.  The son's testimony was: "Yes, sir; I remember a time my mother claims to have seen him drink a drink at Birkman's saloon.  I remember the details to be this.  She was upstairs and I was sleeping there.  Papa was down stairs walking around, and she heard him walking around, so she got up and I was waked.  We heard him go out of the front door; she went down and went out behind him, and she seen him drink.  I know she went out behind him.  Yes, sir; she came back in a little while.  Yes, sir; my father came back.  They did not come back together; they came pretty close together.  Mamma came back first."

The objection that appellant makes is that the question and answer complained about elicited hearsay testimony corroborative of plaintiff's statement as to seeing him get a drink on a certain occasion.  Appellee states that the evidence was harmless in view of the fact that Birkman did not contradict her as to this drink, and that the fact was undisputed. But it seems to us that it would not be entirely satisfactory to so dispose of the objection.  Mrs. Fahrenthold was interested, and the jury might not have seen fit to credit her unsupported statement, and corroboration of it might have been important.

The question was evidently intended merely to direct the mind of the witness to the event which the mother claimed she had seen, and to which she had testified having seen, for the purpose of having the witness state what he knew concerning the matter.  This was admissible. The witness did not, in answer to the question, testify that he had heard his mother claim that she had seen his father drink at Birkman's, but that he remembered a time when his mother claims to have seen him do so.  He was evidently referring, as did the question put to him, to the

circumstance of what his mother had claimed in her testimony, in order to direct his testimony to the same subject matter.

The twelfth assignment complains of this testimony of the son: "My mother sent me to Birkman's once, and she told me to tell him to stop selling whiskey and stuff to papa." The witness proceeded: "I went to him. He said he would not sell him any more." It is the first of these quotations that was objected to. In view of the allegation by defendant that he had made no sales to Fahrenthold until after she had withdrawn her notice and given him permission, and that "notwithtanding which she made no complaint to said Birkman until the filing of the suit," the evidence was admissible. This allegation was excepted to by plaintiff and the exception overruled. This allegation being held in the case as a good plea, testimony in reference to it was admissible. Besides, this tended to show that the notice was in force at the time.

The thirteenth assignment complains of this part of the charge: "You are charged that the plaintiff is not confined to the specific dates of sale alleged in her petition, but that if the evidence shows any sales made between the time defendant gave his bond, to wit, February 3, 1906, and the time this suit was filed, such evidence, if you find it to be true, would prove the dates sufficiently."

The proposition is that this allowed a finding upon an issue outside of the case, and there is under the facts of this case an unreasonable variance between allegation and proof, and the charge is upon the weight of the evidence.

In the statement appellant shows that the suit was filed August 27, 1906. The date of the last sale was August 19, 1906. The plaintiff testified to a sale, giving the date July 30, 1906, and the date of no other sale is mentioned by any witness further than Birkman testifying that between a certain date and date of suit he made ten sales. The petition did not allege fixed dates of sales. It alleged sales "on or about" the following dates: May 15, June 10, July 30, August 13, August 15, August 17, August 14 and August 19, in the year 1906, thus charging eight violations. Plaintiff was not held to prove violations on said particular dates. (Munoz v. Brassel, 108 S. W., 420; Hawthorne v. State, 39 Texas Civ. App., 122.) Although the last date stated was several days prior to the filing of the suit, still the allegation was "on or about" that date.

The fourteenth is that it was error, in a civil suit involving statutory penalties, to charge that the burden is upon plaintiff to show, by a preponderance of the evidence, the material allegations of her petition. There was no error on this. Cox v. Thompson, 37 Texas Civ. App., 607, and cases there cited.

The fifteenth assignment complains of the fifth paragraph of the charge, which was as follows:

"If you find from the evidence that, at the time charged in the plaintiff's petition, the husband of plaintiff, the said Herman Fahrenthold, was an habitual drunkard, and that while he was such habitual drunkard, and after the third day of February, 1906, and within the time charged in plaintiff's petition, the defendant, Henry Birkman, did sell or give, or permit to be sold or given, to the said Herman Fahrenthold, at the defendant's place of business in Weimar, Colorado County, any

spirituous, vinous or malt liquor, or medicated bitters capable of producing intoxication, you will find for the plaintiff five hundred dollars for each separate time that the said defendant so sold or gave, or permitted to be sold or given, any of such intoxicants to the said Fahrenthold, unless you further find from the evidence that when he sold or gave, or permitted to be sold or given, such intoxicants to the said Fahrenthold, the sale or gift was made in good faith, with the belief that said Fahrenthold was not an habitual drunkard, and there was good reason for such belief then, upon this branch of the case you will find for the defendants. As the times alleged in the plaintiff's petition alleging sales, gifts, etc., to Fahrenthold as an habitual drunkard, and such sales, gifts, etc., after service of notice not to sell, are identical, if you find for the plaintiff under the charge thus far given you, then you need not consider the following paragraph, but if you find for the defendants under the charge thus far given, then you will consider the next succeeding paragraph."

The proposition is that this charge was on the weight of evidence and assumed a controverted fact, but the brief does not mention what fact it was. We presume, however, that the word "when" is the trouble, for in the statement that word is italicized. A charge worded as this was, "unless you further find *from the evidence* that when he sold or gave," etc., is not subject to the criticism that it assumes the fact, or does not submit it to the determination of the jury. This is settled by a line of cases beginning with Missouri Pac. Ry. v. Lehmberg, 75 Texas, 62.

The sixteenth assignment complains of paragraph sixth of the charge, as follows:

"If you find from the evidence that after the notice not to sell was served upon the defendant, Birkman, and after the 3d day of February, 1906, and within the time charged in plaintiff's petition, the said Birkman sold or gave, or permitted to be sold or given, to the said Herman Fahrenthold any of said intoxicants, then you will find for the plaintiff the sum of five hundred dollars for each separate time the said Birkman sold or gave, or permitted to be sold or given, to the said Fahrenthold any such intoxicant at Birkman's place of business at Weimar, as charged in plaintiff's petition. But if you find that after the notice not to sell such notice was revoked by the plaintiff, and Birkman was informed of such revocation, then you are instructed that, unless you find that sales or gifts were made or permitted to be sold or given of such intoxicants by the said Birkman to the said Fahrenthold between the time of the service of the notice not to sell and the time the said Birkman received notice of the revocation thereof, you will find for the defendants on this branch of the case, regardless of whether such revocation was made by the plaintiff under duress on the part of the husband or not."

Several objections are directed to this charge:

First. If the jury believed that plaintiff told Wolff (another saloonkeeper), as Wolff testified she did, that she withdrew the notices to him, and told him to notify the other saloon men that they could sell to her husband, it was not necessary, as the above charge would require, for such notice to be communicated to Birkman. The trial judge doubtless considered that if the message which Wolff was authorized to convey

went no further, it had no effect as a revocation of the notice to this defendant. We think its status was the same as if it had never been given or was abandoned, the defendant not having heard of it nor acted upon it.

Second. The paragraph assumed that notice not to sell had been served upon Birkman, by telling the jury to find for defendants unless they found "that sales or gifts were made, or permitted to be sold or given, of said intoxicants between the time of service of the notice not to sell and the time Birkman received notice of revocation thereof." The words *"time of service"* being italicized in the brief, we suppose this is the difficulty.

We may as well, in this place, deal with the twentieth assignment, which complains of the preliminary portion of the charge where the court charged that the evidence shows that the notice not to sell to plaintiff's husband was made and was served upon Birkman as the law requires. Inasmuch as the fact was assumed elsewhere in the charge, and the jury instructed directly as to it, we shall dispose of both these assignments by saying that we think the undisputed evidence supported the charge.

Third. That there was error in the said paragraph in this, "that where the date of service of notice not to sell antedates the execution of the bond sued on, it is error for the court to instruct the jury that they can not find for the defendants if they find that the dealer made sales or gifts before the execution of the bond."

The charge does not fairly admit of that construction. It nowhere charges in terms to that effect. The paragraph admits of a verdict for plaintiff only if the jury should find from the evidence that the sales or gifts were made after the notice was served and after the 3d day of February, 1906, and within the time charged in the petition. The remainder of the charge, where it refers to sales or gifts, is manifestly subordinated to the first portion of the charge, and could not have misled the jury into thinking that they could find for plaintiff, or against defendants, for sales or gifts which preceded the giving of the bond.

The seventeenth assignment complains of the seventh paragraph of the charge, which is as follows:

"If you fail to find that the said Fahrenthold was an habitual drunkard, as charged, at the time of the alleged sales or gifts of intoxicants, you will find for the defendants on this branch of the case, or if you find that he was then an habitual drunkard, but that such sales or gifts were made in good faith, with the belief that the said Fahrenthold was not an habitual drunkard, and that there was good reason for such belief, you will find for the defendants on this branch of the case. And so, if you also fail to find that sales or gifts of intoxicants were made to the said Fahrenthold between the dates of the service of the notice not to sell and the revocation thereof (if there was such revocation), you will find for the defendants."

It is contended that the above assumes that sales, etc., were made as alleged. We think it does not do so, and that the jury could not have received from it the impression that such facts could be found by them except from the evidence. The succeeding paragraph No. 8 so explains.

Another proposition under the assignment is the same as that disposed of under the next preceding assignment under the third head.

The eighteenth complains of the eighth paragraph of the charge, which is as follows:

"While the burden of proof is upon the plaintiff to establish her case by a preponderance of the evidence, yet, if this has been done in accordance with the allegations of her petition, where the defendants rely upon affirmative matter as ·defense, then the burden is upon defendants to establish such defense by a preponderance of the evidence. Thus, if the plaintiff has established, by a preponderance of the evidence, that sales or gifts of intoxicants were made to the said Fahrenthold, as alleged, and that when such sales or gifts were made the said Fahrenthold was an habitual drunkard, then the burden would be upon defendants to show that when such sales or gifts were made they were made in good faith, with the belief that Fahrenthold was not an habitual drunkard, and there was good reason for such belief. And so, if such sales or gifts were made as alleged to the said Fahrenthold after notice was served upon Birkman not to sell to him, then the burden is upon the defendants to show by a preponderance of the evidence that at the time of such sales or gifts the notice not to sell had been revoked, and that such revocation had been made known to Birkman."

One proposition is that this charge intimated that, in the opinion of the court, ·certain controverted issues had been established, and was, therefore, on the weight of the evidence. The paragraph is not subject to the criticism. The other proposition is the same as that disposed of under the sixteenth assignment, under head No. 1.

The nineteenth is that the charge was erroneous in submitting the issue of gifts of intoxicants made or permitted to be made to Fahrenthold by defendant at his place of business, for the reason that there was no evidence that Birkman or any of his employes or agents gáve or permitted to be given any intoxicants to him. Defendant testified by deposition that "Henry Insall set up the drinks to him in my saloon about two weeks ago."

By the twentieth assignment it is contended that the court erred in assuming that notice, as required by the statute, was served on Birkman. We find the evidence warranted the assumption of that fact.

Under the twenty-first assignment we have this proposition presented to us: "It is the duty of the upper court to reverse a case when the verdict on which the judgment is based is excessive, rendered through prejudice, or is without evidence to support it." This elementary principle is made the basis of a claim that the uncontroverted evidence was against the theory that Fahrenthold was an habitual drunkard. The testimony was sufficient to support the allegation. The other contention, it seems, is that there was no proof sufficient to warrant finding that a notice not to sell was served in the manner to be effective. This we rule against also. In fact, we have already stated that the fact was properly assumed by the court as proved.

The twenty-second is as follows: "The court erred in refusing to set aside the verdict, because, as to the sureties, it is against the evidence, and that the only evidence admissible against them comes alone from the plaintiff, and she testified to only one sale, and that was on July 30th, the only other evidence of sale being the deposition of Birkman, and Birkman's admissions through the witness, plaintiff's attorney,

Brown, which are not admissible against said sureties, but which, taken together, show the sale testified to by plaintiff, as well as those admitted by Birkman, was after she had revoked notice not to sell."

The proposition advanced and relied on is this: "Statements of the principal in a bond are not admissible, as an admission against the sureties, unless said statements are *res gestae.*"

The matter was raised by the motion for new trial. The proof of specific violations extended only to a sale on July 30th, and a gift in the saloon of defendant on another occasion. It appears, however, that upon the filing of the suit the *ex parte* deposition of Birkman was taken, in which he testified, in effect, that he didn't know how many times sales or gifts were made in his saloon to Fahrenthold between January 1, 1906, and August 25, 1906; that it was about twenty times; that he got a drink once in a while, just how many times he could not say; that "Henry Insall, our marshal, set up the drinks to him in my saloon about two weeks ago."

It appears that the notice was given in the latter part of 1905 (not later than January 1, 1906) and the bond sued on was given February 1, 1906. This deposition was proper evidence as against Birkman, but as to the sureties the court properly charged the jury that they would not consider it for any purpose so far as the sureties were concerned. This was manifestly correct, as the sureties were not parties to the deposition and were not affected by his admissions or declarations, and the answer referred to a period extending from January 1, 1906, and they did not become sureties until February 1, 1906.

It appears, further, that Mr. Brown, one of plaintiff's attorneys, took the stand and testified as follows: "I wish to testify that I heard Mr. Birkman testify at the last trial; he testified that what he stated in his deposition was true, and that he had made at least ten sales of liquor to Herman Fahrenthold between the time the notices were served and the time that he was sued, when this suit was filed. In justice to him I will state that he claimed that it was after he thought the notices were taken up or withdrawn."

The above was the use of an admission by Birkman which could properly be used as against him, but it was not evidence as against the sureties. Lacoste v. Bexar County, 28 Texas, 420; Coe v. Nash, 91 Texas, 122. The defendants objected to this evidence of Brown for the reason that it was not admissible as an admission, which objection as made was overruled, and properly so, because it was admissible, at least as to Birkman. It thus became a part of the evidence. But it seems to us that it was lacking in probative force, as was the deposition, upon the issue of sales made between the date the bond was given and the date of the suit, so far as the sureties were concerned, for the reason that it applied to a period beginning before the bond was executed, as much so as the deposition which the court charged was without effect as to the sureties.

The general rule is that where evidence is properly in because it is proper evidence in reference to one party, the party it is not admissible to affect should ask the court to limit its application and effect by a charge. This rule, we think, has no proper application where the question is: Does the testimony support the verdict? Had the charge been

asked by the sureties limiting the testimony of Brown in its effect to the principal, and it had been given, the question would still arise whether the verdict as to the sureties was supported by evidence. We think they can be in no worse position on this question, because such an instruction was not given. The testimony does not support a finding as to the sureties that there were more than two infractions of the bond between the giving of the bond and the filing of the suit, unless testimony that during a period from a date preceding the bond to the filing of the suit there were ten violations, is proof that ten violations, or any certain number of violations, occurred during the life of the bond. We think it clearly could not be given such effect, and therefore the recovery against the sureties ought not to be allowed to go further than for the two violations shown by other testimony.

We conclude that the judgment should be affirmed as to Birkman but reformed as to the sureties, so that the recovery against them shall be for $1,000.

*Reformed and affirmed.*

Writ of error refused.